UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

PAUL L. ANTROSS,

Petitioner,

v.

Case No. 23-cv-47-pp

ROBERT MILLER,[1]

Respondent.

---

**ORDER DENYING PETITION FOR WRIT OF *HABEAS CORPUS* (DKT. NO. 1), DISMISSING CASE AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

---

In January 2023, the petitioner filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254 challenging his 2019 judgment of conviction in Waukesha County Circuit Court Case No. 2017CF669 on two counts of possession of child pornography, following a guilty plea. Dkt. Nos. 1 at 2; 9-1. The petitioner filed a direct appeal arguing that the circuit court judge was biased and prejudged the petitioner's sentence in violation of his due process right to an impartial judge. Dkt. No. 1 at 3. The Wisconsin Court of Appeals affirmed and the Wisconsin Supreme Court denied the petition for review. Id. at 3. The petitioner raises the due process violation in his federal petition, dkt. no. 1, but also argues that AEDPA (the Antiterrorism and Effective Death Penalty Act of 1996) and the Supreme Court's decision in Harrington v. Richter, 562

[1] Under Rule 2 of the Rules Governing Habeas Cases, "[i]f the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody." The petitioner is incarcerated at Racine Correctional Institution; this order reflects Warden Robert Miller as the respondent. The court will update the docket accordingly.

U.S. 86 (2011) are unconstitutional. Dkt. No. 13 at 11. For the reasons explained in this order, the court will deny the petition, decline to issue a certificate of appealability and dismiss the case.

## I. Background

### A. State Court Proceedings

On May 12, 2017, the State charged the petitioner with five counts of possession of child pornography in violation of Wis. Stat. §948.12(1m); he was released on a $25,000 cash bond. Dkt. No. 9-2 at 4. On August 9 2017, the State filed an amended information with five additional counts of possession of child pornography and five counts of sexual gratification with an animal in violation of Wis. Stat. 944.17(2)(c). Id.

The state court docket reveals that the petitioner had seven attorneys between the filing of the complaint and the order of the Wisconsin Supreme Court denying his petition for review. State v. Antross, Case No. 2017CF669 (Waukesha County Circuit Court) (available at wcca.wicourts.gov). The parties' appellate briefs recount the procedural history of the state-court case, which includes multiple requests to adjourn and multiple requests to dismiss counsel. Dkt. Nos. 9-2 at 4-9; 9-3 at 5-8. On April 26, 2018, the petitioner hired Attorney Christopher Carson to represent him, but on the eve of trial, Attorney Carson asked for more time because he believed the case would resolve with a plea. Dkt. No. 9-2 at 5. Waukesha County Circuit Court Judge Michael Aprahamian granted the request and scheduled a change-of-plea hearing for August 15, 2018. Id. At the change-of-plea hearing, the petitioner's counsel asked for another adjournment to complete some additional investigation. Id. The court granted the adjournment, but warned:

> All right. It seems like there is a little bit of gamesmanship maybe going on here that I noticed. When I looked at the fact this was

> already set for trial and was set for plea and sentencing back in November and there has been several attorneys and you have a right to change attorneys. But we're going to schedule this for trial again. As we proceed to that trial and if you request some sort of adjournment or want to go to plea and sentencing and I schedule this such and you don't decide to go, we're going to have a trial or the option is you plead to every single count. That's your two choices if we don't plead the next time we go. So I'm going to schedule it for plea and sentencing in two weeks. Is that enough time for your investigator to investigate this?
>
> …
>
> Sure. I'll tell you what. I'll give you 30 days. I'll schedule for plea and sentencing in 30 days and I'm also going to get a trial date on there. If we don't got to plea and sentencing we're going to go to trial or you have to plea to every single count.

Id. at 5-6.

On September 17, 2018, the parties appeared for a plea hearing, at which time Attorney Carson informed the court that they were not ready to proceed because there was "one final avenue of defense" that they needed to investigate. Dkt. No. 9-9 at 2. The court stated:

> I'm not going to make him go to plea. I told you what the conditions were. If I schedule for plea or trial we're going to go to trial then and I'm not going to accept any plea unless it's a plea to every single count because it seems like gamesmanship regarding proceeding in this case.
>
> This has been scheduled for plea and sentencing at least on two occasions. We were set for a jury status in July. At that time you said you wanted to go to plea and we put off sentencing. And then we had a plea hearing scheduled for August 15th and he didn't want to go to plea at that time and I told him that's the condition of not going to plea. I'm going to put this on the trial calendar scheduled for another plea hearing that was today. I was pretty clear if he doesn't go to plea today I can't make him go to plea but I can make him go to trial.

Id. at 3-4.

At that point, counsel asked for time to speak with the petitioner; when the case was re-called, the petitioner pled guilty to two counts of possession of

child pornography. Id. at 4. The petitioner completed a plea questionnaire and a waiver of rights form. Id. at 5. In exchange for the petitioner's guilty plea to two counts, the State agreed to dismiss the remaining thirteen counts. Id. The State asked for the mandatory sex offender registration of fifteen years. Id. The court explained to the petitioner that the remaining eight counts of child pornography and five counts of sexual gratification with an animal would be dismissed and that the petitioner wouldn't face any fines or potential incarceration relating to those counts but that the court would hold him accountable for his conduct when deciding an appropriate sentence on the two counts to which he was pleading guilty. Id. at 7. The petitioner said that he understood. Id.

The court reviewed with the petitioner the charges and the plea questionnaire. Id. at 8. The petitioner said that counsel had explained the potential consequences, including a fine of up to $100,000 and a prison term of up to twenty-five years. Id. at 9. The petitioner said that he understood that the minimum term of incarceration was three years with a minimum surcharge of $500 per image. Id. The petitioner also said that he understood that the stipulation included in the plea was that there were ten images, so the surcharge would be $5,000. Id. He also said that he understood the requirement that he register as a sex offender for a minimum of fifteen years. Id. When taking the plea on each count, the court again asked the petitioner whether he understood that he was facing a minimum term of imprisonment of three years and up to twenty-five years in prison. Id. at 11-12. The petitioner said that he understood. Id. The court asked questions regarding the plea questionnaire and the petitioner's waiver of rights. Id. at 12-16. Again, the petitioner said that he understood. Id. The court found that the guilty pleas

were freely, voluntarily and intelligently made. Id. at 18. The petitioner told the court that he was satisfied with Attorney Carson's representation. Id. at 17. He admitted that he had possessed photographs of children engaging in sexually explicit conduct and knew that they were under the age of eighteen. Id. at 18. He stipulated that there were at least ten images on his computer or hard drives. Id. at 19.

At the sentencing on November 16, 2018, Attorney Carson asked the court for leave to withdraw as counsel because the petitioner had discharged him. Dkt. No. 9-10 at 2. The petitioner said that he was looking for another attorney but didn't have one because he believed he had to discharge Attorney Carson first. Id. at 3. Judge Aprahamian responded:

> THE COURT: Okay. I'm revoking bail. You're going in today. You are not postponing this any more.
>
> THE DEFENDANT: Okay.
>
> THE COURT: So today is your judgment day in the sense that you're going in. So you can get your new attorney when you're in there.
>
> THE DEFENDANT: Okay.
>
> THE COURT: Do you understand? So you can work with your mom, you can work with getting your attorney; but today you're going in and you're not getting out for a long time.
>
> THE DEFENDANT: Okay.

Id. at 4. The petitioner asked to explain his reasons for wanting a new attorney, but Judge Aprahamian said:

> THE COURT: It's irrelevant. I don't need to know that. The reason you're going into custody is because you've been found guilty[,] and I didn't revoke bail last time. I should have revoked bail . . . on the day you pled. I typically would have. I didn't. I cut you some slack. But as I mentioned before, it seems like you're stalling, delaying, delaying, delaying. It doesn't matter though. You're guilty. You were already found guilty.

Id. at 5.

The petitioner then said that Attorney Carson wasn't doing what the petitioner was telling him to do. Id. Judge Aprahamian responded:

> THE COURT: There's often breakdowns in relationships. And it's an important relationship, and if you're not comfortable pursuing with Mr. Carson on one of the most important days of your life going forward on sentencing on these two felonies for which there's mandatory minimum and significant prison time at stake, you should get the attorney you want to represent you. I want to give you that opportunity.
>
> So let's do this: Let's schedule it for status on that week to make sure you have an attorney. We won't go to sentencing on that date. It will be a status. We can have a quick turnaround to go to sentencing if we need to. But I want to make sure that we're prepared to go.

Id. at 6. The court set the status conference for December 17, 2018 and, after a question from the prosecutor about Judge Aprahamian "rotating out in January" and the prosecutor noting the "long, long history" with the case, the court informed the parties that it would be "hanging on to th[e] case." Id.

The petitioner appeared for the December 17, 2018 hearing and his new attorney, Jessica Klein, stated that she had not received all the discovery. Dkt. No. 9-11 at 2. The court instructed Attorney Klein to contact the state regarding any additional information that she needed and set another status conference for January 11, 2019. Id. at 2-3. On January 11, 2019, Attorney Klein appeared with the petitioner but said that she had not had an opportunity to go to the Sheriff's Office to view some images. Dkt. No. 9-12. The court granted an adjournment and scheduled sentencing for February 15, 2019. Dkt. No. 9-12 at 2.

At the February 15, 2019 sentencing hearing, the prosecutor opened with the following remarks:

MR. THURSTON: . . . Just very briefly I have to say I want to say, you know, as a sensitive crimes prosecutor for this county and sensitive crimes prosecutor of Milwaukee County, one of them in Milwaukee County, I have to say this is probably the most disturbing child pornography case I've seen and I say that not necessarily because of just the images that we have here but because of the levels of disturbance that are involved.

I count at least three, maybe four different levels of disturbance. Probably four. I want to just start very briefly with the images themselves.

I'm not going—I'm not going to go through and reiterate here in open court in front of everybody all the different images that were found on electronic devices, but let's just paraphrase it this way, they were aggravated. They were beyond disturbing.

One of them involved urination on a prepubescent child. There were a lot of them. There were a lot of videos. I would say that's the first level of disturbance.

The second level of the disturbance we have bestiality. Not only bestiality with him and his dog but we have a reference in the PSI to him enjoying the viewing of bestiality of videos with sexual intercourse with a lot of other animals, multiple different kinds of animals. Disturbance number two.

Disturbance number three. We have the prior, the prior—really there are two, three cases. There is a police case that was battery domestic violence related that I think was dismissed and read in and then the subsequent case that involved the initial referral of possession of child pornography and then I think ultimately he was convicted of a lesser offense but essentially the child pornography was now him gathering stock photos from the Internet, as trouble as we see, and the victim impact, the victim impact forms.

That case involved his girlfriend's son and he's standing outside the girlfriend's son's bathroom, I believe outside the house. It appears from the summary, this is on Page 10 of the PSI, I'm getting here from midway down the second full paragraph under that box that says Waukesha County Case No. 10-CF-1255. Midway down the second full paragraph, Agent Burg, who by the way did an excellent job as she always did with her business, "It appeared the picture was taken from outside of a window. An officer showed those pictures to Jennie B., who confirmed those were pictures of her son CB who would have been approximately 13 years old at the time they were taken."

> He was—He was naked. He was undressed and he was in, it looks like in the shower showering. I'm sorry. It looks like his genitals were showing.

Dkt. No. 9-13 at at 6-7.

Attorney Klein spoke on behalf of her client and acknowledged that she was his sixth attorney in two years, but she pointed out that the first few attorneys were on the case for only a few days. Id. at 12-13. She also noted that the petitioner had taken full responsibility for everything found in his residence, including pictures on a thumb drive. Id. at 13. She explained that her client had a compulsion. Id. The petitioner told the court that he accepted responsibility, was ready to change and wanted to apologize. Id. at 16.

When imposing the sentence, the court explained its reasoning:

> When I impose my sentence I need to look at protection of the community, the gravity of the offense and the character and rehabilitation needs of the defendant.
>
> Typically the first disposition is a probationary disposition but that's not in the cards here given the mandatory minimum that's directed on each one of the counts and your attorney, yourself isn't even asking for a probationary sentence.
>
> I'm going to first talk about the seriousness of the charge and this is two counts of possession of child pornography Class D felonies for which you could serve a maximum period of incarceration of 25 years with initial confinement maximum of 15 years and ten years of extended supervision.
>
> There is a mandatory minimum incarceration of three years of initial confinement and you're facing two counts. Those are the two counts to which you entered guilty pleas. There were 15 total counts that you were charged with including an additional eight counts of child pornography that were dismissed and read in and five counts of sexual gratification of an animal, that was with an animal, that were dismissed and read in.

Id. at 16-17.

The court discussed the victim impact statements and the petitioner's character and rehabilitation needs. Id. at 17-18. The court explained that the circumstances of the petitioner's prior case were particularly troubling. Id. at 19. The petitioner had taken photographs of his girlfriend's son in the shower and pictures of the child's genitals as he undressed. Id. The court pointed out that the petitioner was not only viewing but making material. Id. The court acknowledged that the petitioner had served a sentence in a previous case but stated that he came out and committed another offense that left the court "a little frankly overwhelmed" by the number of images and files on the thumb drive. Id. at 19-20. The petitioner admitted to sharing these images with other people and taking pictures of children in public places. Id. at 20. The court found the petitioner's character to be lacking and his rehabilitation needs significant. Id. at 21. The court focused on the fact that the petitioner had been in prison for similar conduct and that after his release was "doing the very same thing, maybe even more aggravated in the sense of having sex with an animal. And just taking pictures of children on a playground and in shopping malls." Id. at 21. The court expressed concern about protecting the community. Id. The court rejected the PSI assessment that the petitioner was at low risk to reoffend, stating that the petitioner had "already reoffended after serving a significant prison sentence and offended in what [the court] view[ed] as a very aggravated manner." Id. at 22.

Based on all those factors, the court imposed a sentence of twelve years of initial confinement followed by ten years of extended supervision on each count, to run concurrently with each other. Id. at 24. The court emphasized that it viewed this as a "very aggravated case" and that it did not trust the petitioner in the community. Id.

The petitioner filed a postconviction motion asking for a new sentencing hearing in front of a different judge, arguing that the court was not impartial and had demonstrated objective bias. Dkt. No. 9-14 at 3-5. Former Waukesha County Circuit Court Judge Brad Schimel conducted a hearing at which time a new attorney, Christopher Sobic, appeared on behalf of the petitioner. The court recounted the procedural history, the requests for adjournment and Judge Aprahamian's frustration with the number of stops and starts. Id. at 8-9. The court distinguished the cases cited by defense counsel on the ground that the petitioner had pled guilty *before* the court revoked his bail and said that the petitioner was going to prison for a long time. Id. Judge Schimel found that the court and the petitioner knew at that time that each count to which the petitioner pled guilty carried a three-year mandatory minimum term of incarceration. Id. at 10. Judge Schimel observed that the minimum term of three years was "a long time compared to what [the petitioner] had sat on bond initially in the case." Id. at 10-11. He added:

> I don't find any evidence that Judge Aprahamian had a personal or professional grudge against [the petitioner]. He exercised his discretion. He outlined the reasons for his decision. Maybe a different Judge would make a different decision about the length of the prison sentence. Even the PSI was recommending six years of confinement. The DA was recommending ten. Even in spite of that . . . even in spite of him going over the recommendations, he still hadn't approached the maximum sentence available in the case.

Id. at 11. Judge Schimel acknowledged that, taken out of context, Judge Aprahamian's statements might have seemed like an inappropriate determination, but he focused on the fact that everyone knew from the plea that the petitioner would be getting a mandatory minimum of three years. Id. at 12. Judge Schimel denied the petitioner's motion for resentencing. Id. at 13.

The petitioner appealed. The Wisconsin Court of Appeals summarily affirmed the judgment of conviction and order denying the petitioner's motion for postconvction relief. State v. Antross, Case No. 2021AP97-CR, 2022 WL 2826860, *3 (Wis. Ct. App. July 20, 2022). The Court of Appeals focused on the fact that the petitioner knew that he was going to prison "for what can reasonably regarded as a 'long time' no matter what sentencing arguments were presented" because there was a mandatory minimum sentence of three years' initial confinement for possessing child pornography. Id. at *2. The court concluded that the petitioner had not satisfied his burden of rebutting the presumption of judicial impartiality. Id. The Wisconsin Supreme Court denied the petitioner's petition for review. Antross, No. 2021AP97-CR, 997 N.W.2d 881 (Wis. 2022).

B. Petition (Dkt. No. 1)

The instant petition identifies a single claim: that the state court violated the petitioner's due process right to an impartial judge. Id. at 6. Under the section of the petition titled "Supporting FACTS," the petitioner writes:

> The record is full of exerpts where the judge denied counsel's request for more/sufficient time to investigate and prepare a defense with comments indicating [the petitioner] must plea at the next date or he won't accept a plea except to all counts. Namely, the judge said, "you're going in and you're not getting out for a long time!!" After [the petitioner] was convicted by plea, but before sentencing arguments were made. The totality of the circumstances give rise to the appearance of bias, and arguably, actual bias, where the result justifies the judges comments in that [the petitioner] received close to the maximum penalty on each count, and thus reflects the long sentence he appeared on intending to give [the petitioner].

Id. at 6-7 (as in original).

C. Petitioner's Brief in Support (Dkt. No. 13)

The petitioner argues that Judge Aprahamian "manifested the appearance of objective bias" on the record when he said, "today you're going in

and you're not getting out for a long time." Dkt. No. 13 at 3-4. According to the petitioner, the Wisconsin Court of Appeals identified the correct legal standard but unreasonably applied the law to the facts of the case. Id. at 4. The petitioner accuses the state court of converting the objective standard into a subjective standard. Id. According to the petitioner, whether the parties and Judge Aprahamian were aware that the petitioner faced a three-year mandatory minimum is not the objective standard. Id. The petitioner argues that the court should have asked whether the "average judge in [Aprahamian's] position was likely to be neutral or whether there existed an unconstitutional potential for bias." Id. at 5 (citing Hurles v. Ryan, 752 F.3d 768, 789 (9th Cir. 2014)). The petitioner argues that "the Wisconsin Court of Appeals polluted its legal analysis by making it contingent on its own subjective belief that a mandatory minimum of 3 years is a 'long time.'" Id. at 5. He reasons that "the majority of reasonable people would still agree that a 'few years in prison' *does not constitute* a 'long time' whereas a 'decade in prison' *does constitute* as a long time." Id. at 5-6 (emphasis in original). The petitioner argues that by giving him twelve years, Judge Aprahamian made good on his threat. Id. at 6.

The petitioner argues that Judge Aprahamian denied him effective assistance of counsel and pressured him into pleading guilty. Id. at 7. The petitioner says that because Judge Aprahamian stated on the record that he would not accept another adjournment of a plea hearing and would schedule the case for trial if the petitioner didn't plead that day, he felt he had no choice but to plead guilty because his attorney wasn't prepared for trial. Id. at 8. He cites Walberg v. Israel, 766 F.2d 1071, 1077 (7th Cir. 1985), for its holding that a judge who is "hostile to a lawyer as to doom the client to defeat deprives the client of the right to an impartial tribunal." Id. The petitioner acknowledges

that the Wisconsin Court of Appeals found that he was not claiming that the court pressured him into a guilty plea, but he suggests that the court must look at the totality of the circumstances rather than looking at the judicial bias claim in isolation. Id. He asserts that a judicial bias claim is intrinsic to the claim of constructive denial of effective assistance of counsel. Id. at 10. The petitioner accuses Judge Aprahamian of being "personally embroiled" with the petitioner and his counsel. Id. at 9-10.

As a final matter, the petitioner argues that AEDPA and the Supreme Court's language in Harrington are unconstitutionally overboard and violate due process. Id. at 11. The petitioner did not raise this argument in his petition. He argues that when a court denies a *habeas* petition but then issues a certificate of appealability creates a "bothersome paradox." Id.

D. Respondent's Brief in Opposition (Dkt. No. 18)

The respondent first addresses the constitutionality of ADEPA and the Supreme Court's endorsement of AEDPA in Harrington. Dkt. No. 18 at 6. According to the respondent, any complaints about the restraints imposed on *habeas* review must be addressed to Congress. Id. at 7 (citing Kimble v. Marvel Entm't, 576 U.S. 446, 455-56 (2015); Lonchar v. Thomas, 517 U.S. 314, 323 (1996)). The respondent argues that not only is AEDPA constitutional but this case is not one of the "grave occasions" warranting the "grave remedy" of federal intervention. Id. at 8.

The respondent points out that a petitioner arguing judicial bias bears the burden of overcoming the strong presumption that the adjudicator acted honestly and with integrity. Id. (citing Withrow v. Larkin, 421 U.S. 35, 47 (1975)). The respondent acknowledges that the inquiry is an objective one and that the issue is whether the average judge in the same position was likely to

be neutral or whether there was a potential for bias sufficiently strong to overcome the presumption of honesty and integrity. Id. at 8-9 (citing Alston v. Smith, 840 F.3d 363, 368 (7th Cir. 2016)).

The respondent argues that the Wisconsin Court of Appeals' determination that the petitioner failed to rebut the presumption of judicial impartiality was a reasonable one. Id. at 9. The respondent says that an objective judicial bias claim considers the appearance of bias, and he says that the court of appeals considered how those who were present to hear the offending statement would have interpreted it. Id. at 11. The respondent emphasizes that context matters because anyone familiar with the petitioner's case knew that the charges to which he pled guilty carried a mandatory minimum of no less than three years. Id. at 12. The respondent argues that viewed under that lens, the judge's statement was not a "flippant foreshadowing," but rather a recognition that the Wisconsin statutes mandated a minimum mandatory term of imprisonment. Id.

The respondent rejects the argument that the eventual sentence showed that Judge Aprahamian made good on "on a supposed 'threat.'" Id. at 13. The respondent points out that the court could have tripled the imposed sentence by imposing consecutive, maximum terms. Id. The respondent says that instead, the court listened to sentencing arguments, provided a lengthy justification for the sentence and referenced facts in the PSI, which was not prepared until after the judge had revoked the petitioner's bond. Id. at 13. The respondent dismisses the petitioner's argument that Judge Aprahamian would not have allowed a "plea withdrawal" as "blatant speculation" because the petitioner never asked to withdraw his plea. Id. The respondent adds that if the petitioner is arguing in his brief in support that his plea was coerced, that

claim is waived because he didn't raise it in his petition and he failed to exhaust that claim in the state courts. Id. at 14. The respondent urges the court to deny the petition because the petitioner did not rebut the presumption of judicial impartiality and because he has not shown that the state court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 15.

E. Petitioner's Reply (Dkt. No. 19)

In his reply, the petitioner insists that the presumption of impartiality is "easily defeated by the state appellate court's *sua sponte* highlights of facts which demonstrate that Judge Aprahamian objectively 'appeared' to have pressured [the petitioner] into pleading guilty." Dkt. No. 19 at 2. He accuses the state court of substituting the term "lay person" with the term "vacuum" in order to avoid applying the proper objective standard in its analysis of the appearance of bias. Id. The petitioner adds that the presumption is overcome because the "record leaves one with an abiding impression that the trial judge permitted himself to become personally embroiled." Id. at 3 (citing Harrison v. McBride, 428 F.3d 652, 660 (7th Cir. 2005)).

The petitioner continues to argue that AEDPA is not constitutional. Id. at 4-5. He asserts that "state-created exceptions to the general rule announced by the U.S. Supreme Court are not permissible." Id. at 7. According to the petitioner, there is nothing in the record to suggest that the parties "perceived the 'offending statement' to be an implied minimum penalty." Id. The petitioner argues that the respondent has failed to refute his argument that Judge Aprahamian was personally embroiled in the case. Id. at 8.

The petitioner argues that the respondent accuses him of circular reasoning, but he suggests that the respondent's "reasoning, by dictionary definition, is the only 'circular' argument before the court." Id. at 10. He says that "if [the petitioner's] sentence is measured with the proscribed penalties by the legislature ('short' being the minimum penalty and 'long' being the maximum penalty), and if he received 80% of the maximum penalty for each count, all fairminded jurists would agree that [the petitioner's] ultimate sentence is supportive evidence of actual bias." Id.

With respect to his coercion argument, the petitioner says that the state seems to argue forfeiture rather than waiver because there is nothing in the record to suggest that he knowingly or voluntarily relinquished anything. Id. at 11. He insists that he exhausted his Fourteenth Amendment due process claim and argues that everything in his *habeas* petition and briefing relates back to the same set of operative facts. Id. at 12. He urges the court to look at the entirety of the record because it illustrates that "Judge Aprahamian doubled down on his 'doom'" and doomed the petitioner to a situation where he was left without a meaningful trial defense or effective assistance of counsel. Id. at 13.

## II. Legal Standard

*Habeas* review of a state court petitioner's conviction is limited by AEDPA. Under AEDPA, a federal court may grant a writ of *habeas corpus* if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. §2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. §2254(d)(2).

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams v. Taylor, 529 U.S. 362, 410 (2000) (O'Connor, J., writing Part II and concurring) (emphasis in original). In reviewing a judicial bias claim raised by a *habeas* petitioner, this court has explained that the unreasonable application clause requires the state court decision to be more than incorrect or erroneous:

> "The state court's application of clearly established law must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 71 . . . (2003) (internal citations omitted). "A state court's determination that a claim lacks merit precludes federal *habeas* relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 102 . . . (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 . . (2004)). "If this standard is difficult to meet, that is because it was meant to be." Id. "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. at 102-03 . . . (quoting Jackson v. Virginia, 443 U.S. 307, 332 . . . (1979)).
>
> "AEDPA requires that [the state court decision] be 'unreasonable,' which means something like lying well outside the boundaries of permissible differences of opinion." Hardaway v. Young, 302 F.3d 757, 762 (7th Cir. 2002). "Where Supreme Court cases 'give no clear answer to the question presented, let alone one in [the petitioner's] favor,' it cannot be said that the state court unreasonably applied Supreme Court precedent and thus 'relief is unauthorized.'" Clark v. Lashbrook, 906 F.3d 660, 664 (7th Cir. 2018) (quoting Wright v. Van Patten, 552 U.S. 120 . . . (2008)).

Hermann v. Meisner, Case No. 16-cv-1353, 2020 WL 5748939, at *10 (E.D. Wis. Sept. 25, 2020).

Evaluating whether the rule application was unreasonable requires the court to consider the rule's specificity. Harrington, 562 U.S. 86, 101 (2011). The more general the rule, the more leeway the court has in reaching outcomes on a case-by-case determination. Id. At the same time, AEPDA does not "require state and federal courts to wait for some nearly identical factual

pattern before a legal rule must be applied." Carey v. Musladin, 549 U.S. 70, 81 (2006) (Kennedy, J., concurring in judgment)

## III. Discussion

### A. The Petitioner's Challenge to AEDPA and Harrington

Before turning to the merits of the petitioner's judicial bias claim, the court will address the petitioner's assertion in his brief that "AEDPA, and the U.S. Supreme Court's language in *Harrington v. Richter*, is unconstitutionally overboard and violates due process." Dkt. No. 13 at 11. The petitioner's argument does not articulate how he believes that AEDPA violates the Constitution; he asserts that the United States Supreme Court's language in Harrington creates a paradox if a district court denies a *habeas* petition by concluding the petitioner failed to show the existence of an "error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," yet issues a certificate of appealability "because the 'claim is reasonably debatable'". Dkt. No. 13 at 11. The petitioner argues that in such a case, the "district court has made contrary conclusions." Id. He argues that "the hierarchy of the courts" must be allowed to correct errors in lower court decisions, "lest tyranny." Id. He suggests that the language in Harrington appears to preclude the issuance of a certificate of appealability.

The respondent acknowledges that some federal judges find AEDPA "too confining," but emphasizes that "all federal judges must obey it." Dkt. No. 18 at 7 (quoting White v. Woodall, 572 U.S. 415, 517 (2014)). The petitioner dismisses the respondent's argument, alleging that the respondent's counsel is an "advocate for the legislative branch—a poor source to draw insight from when it comes to answering questions of constitutional dimension." Dkt. No. 19

at 4. The petitioner paints AEDPA as "the enemy of the law of the land." Id. at 5.

AEDPA recognizes the foundational principle of our federal system: state courts are adequate forums for the vindication of federal rights. Burt v. Titlow, 571 U.S. 12, 19-20 (2013). Recognizing that it is the "duty and ability" of the state courts to adjudicate claims of constitutional wrong, the United States Supreme Court has upheld AEDPA's "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in the state court." Id. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. The Supreme Court explained "[i]f this standard is difficult to meet"—and it is—"that is because it was meant to be." Id.

By comparing the standard governing a merits review to the issuance of a certificate of appealability, the petitioner compares apples to oranges. A petitioner may file a *habeas* petition in federal court and obtain a ruling on the merits but he has no "absolute entitlement to appeal a district court's denial of his petition." Miller-El v. Cockrell, 537 U.S. 322, 335 (2003). To appeal the denial of a *habeas* petition, a petitioner must seek and obtain a certificate of appealability from a federal court. 28 U.S.C. §2253(c). The certificate of appealability requires the court to find only that reasonable jurists could debate whether the petition should have been resolved in a different manner. Id. at 336. The issuance of a certificate of appealability is not a merits review and that is why there are two different standards.

To the extent that the petitioner takes issue with decisions of the United States Supreme Court defining and confirming the AEDPA standards, this

court lacks the power to overrule the United States Supreme Court. "It is the [the Supreme] Court's prerogative alone to overrule one of its precedents." United States v. Hatter, 532 U.S. 557, 567 (2001).

B. Judicial Bias

Turning to the merits of the petition, the United States Supreme Court has stated that it "is axiomatic that '[a] fair trial in a fair tribunal is a basic requirement of due process.'" Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 885 (2009) (quoting *In re* Murchison, 349 U.S. 133, 136 (1955)). A litigant need not show that the judge has actual, subjective bias. Rippo v. Baker, 580 U.S. 285, 287 (2017) ("[T]he Due Process Clause may sometimes demand recusal even when a judge ha[s] no actual bias.") (internal quotation and citation omitted). Rather, recusal is required when, "objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" Id. (quoting Withrow v. Larkin, 421 U.S. 35, 47 (1975)); see also Williams v. Pennsylvania, 579 U.S. 1, 8 (2016) ("The Court asks not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias.") (internal quotation and citation omitted).

The petitioner does not argue that the Wisconsin Court of Appeals operated under the wrong standard. That court correctly identified the standard articulated by the United States Supreme Court, as applied by the Wisconsin courts:

> "The right to an impartial judge is fundamental to our notion of due process." *State v. Goodson*, 2009 WI App 107, ¶8, 320 Wis. 2d 166, . . .. On appeal, we presume that a judge has acted "fairly, impartially, and without bias; however, this presumption is rebuttable." *Id.* We apply two tests to determine whether the

> defendant has rebutted the presumption, one subjective and one objective; if the defendant satisfies either test, he or she is entitled to resentencing. *Id.*, ¶¶8, 18. Consistent with [the petitioner's] arguments, we review objective bias only in this case, which presents a question of law this court reviews independently. *See State v. Herrmann*, 2015 WI 84, ¶23, 364 Wis. 2d 336, . . ..
>
> Objective bias can exist in two situations: when the facts give rise to an appearance of bias or when the record objectively demonstrates that the circuit court in fact treated a litigant unfairly. *Id.,* ¶9. The appearance of bias offends constitutional due process principles "whenever a reasonable person—taking into consideration human psychological tendencies and weaknesses—concludes that the average judge could not be trusted to 'hold the balance nice, clear and true' under all the circumstances." *State v. Gudgeon*, 2006 WI App 143, ¶24, 295 Wis. 2d 189, . . .. In short, "actual bias—either its presence, or the great risk of it—is the underlying concern of objective bias analysis." *Goodson,* 320 Wis. 2d 166, ¶14.

Antross, 2022 WL 2826860, at *2.

The petitioner argues that the Wisconsin Court of Appeals' application of this standard was unreasonable because Judge Aprahamian "manifested the appearance of objective bias on the record on November 16, 2018." Dkt. No. 13. The Wisconsin Court of Appeals accurately recounted the following exchange:

> THE COURT: Okay. I'm revoking bail. You're going in today. You're not postponing this any more.
>
> THE DEFENDANT: Okay.
>
> THE COURT: So today is your judgment day in the sense that you're going in. So you can get your new attorney when you're in there.
>
> THE DEFENDANT: Okay.
>
> THE COURT: Do you understand? So you can work with your mom, you can work with getting your attorney; but today you're going in *and you're not getting out for a long time.*
>
> . . .
>
> The reason you're going into custody is because you've been found guilty and I didn't revoke bail last time. I should have revoked bail on the day … you pled. I typically would have. I didn't. I cut you some slack. But as I mentioned before, it seems like you're stalling,

> delaying, delaying, delaying. It doesn't matter though. You're guilty. You were already found guilty.

Dkt. No. 9-5 at 2-3 (emphasis added).

The Wisconsin Court of Appeals recounted that the trial court had allowed counsel to withdraw and had set another hearing to allow the petitioner to find counsel. Id. at 3. The PSI recommended a term of three years of initial confinement and three years of extended supervision. Id. The State recommended ten years of initial confinement and ten years of extended supervision; counsel recounted "four different levels of disturbance" with respect to the petitioner's behavior. Id. Judge Aprahamaian imposed twelve years of initial confinement and ten years of extended supervision. Id.

The Wisconsin Court of Appeals distinguished the two cases cited by the petitioner, Goodson, 320 Wis. 2d 166 and Gudgeon, 295 Wis. 2d 189, on the ground that Judge Aprahamian's statements were factually correct. Id. at 5. The court wrote: "[the petitioner] was going to prison for what can be reasonably regarded as a 'long time' no matter what sentencing arguments were presented. As the postconviction court recognized, there is a mandatory minimum sentence of three years' initial confinement for possession of child pornography." Id. (citing Wis. Stat. §939.617(1)). The court of appeals rejected the petitioner's arguments that "a reasonable lay observer would not know that possession of child pornography convictions come with a mandatory minimum penalty." Id. The court acknowledged that it does not evaluate objective bias from the standpoint of a legal technician, but rejected the suggestion it must view the comments in a vacuum. Id. The court added that "[a]s the plea hearing transcript demonstrates, the parties and Judge Aprahamian were well aware that [the petitioner] was required to serve a three-year minimum term of initial confinement in prison." Id. The court concluded:

> To be sure, Judge Aprahamian's words could have been more carefully chosen. The State concedes that "the analysis would be different if Judge Aprahamian had made the same comments to [the petitioner] for convictions that carried no mandatory minimum prison sentence and allowed for probation or even a monetary fine," or if Judge Aprahamian had specified a term of initial confinement longer than three years. Nonetheless, those circumstances are not present, and we do not lightly cast aside the presumption that a judge has acted impartially. Under the circumstances here, [the petitioner] has failed to satisfy his burden of rebutting that presumption.

Id. at 5-6.

The petitioner argues that the words "long time" are patently unreasonable because reasonable people would think that three years is not a long time whereas a decade in prison is a long time. Dkt. No. 13 at 5-6. The petitioner emphasizes that Judge Aprahamian made the comments after his guilty plea but "*before* sentencing arguments"—at a time where he says he still had a right to withdraw his plea for a "fair and just reason." Id. at 6. He argues that he felt he had no choice but to plead because of judicial pressure—adding that the court was openly hostile to him. Id. at 8.

In support of his arguments, the petitioner cites Harrison v. McBride, 428 F.3d 652 (7th Cir. 2005) as an example of a case in which the Seventh Circuit found that a state court unreasonably applied Supreme Court precedent. Id. at 9. In Harrison, a witness told police detectives that the trial court judge was connected to the local drug community. 428 F.3d at 655. It became obvious that the defense would rely on testimony about the judge and that the judge would have to rule on the admissibility of the evidence, so the defendant moved for a change of judge. Id. at 668. The trial court judge repeatedly refused "to acknowledge the relevance and probative value of the information" and "demonstrated he was willing to forsake the role of impartial arbiter" to assume the "role of advocate in establishing that he had no

involvement" with the conspiracy. Id. at 669. The judge went to great lengths to protect his name—securing a witness' testimony, questioning detectives about the information, taking judicial notice of criminal records regarding the victim's brother, making records public that were unrelated to the trial—"transform[ing] the hearing on the change-of-judge motion into a proceeding to vindicate 'the credibility of [the] court." Id. The Seventh Circuit found that the defendant did not receive a trial by a judge free from actual bias. Id. at 670.

The petitioner also relies on Walberg v. Israel, 766 F.2d 1071 (7th Cir. 1985). Dkt. No. 13 at 7-8. In Walberg, the Seventh Circuit reversed a defendant's conviction because the state court judge "made up his mind at the start that the defendant was guilty and [ ] proceeded to intimidate the defendant's lawyer so that the proceeding could be got over with and [the defendant] shipped off to prison for many years." Id. at 1077-78. The Seventh Circuit found that the judge was openly hostile to the attorney because the "judge thought [the attorney's] client too obviously guilty to merit such strenuous efforts on his behalf." Id. at 1077. The judge criticized a prosecution witness who gave testimony favorable to the defense, ridiculed the defendant's testimony, threatened to not approve the court-appointed attorney's fees, implied that he would never appoint his attorney again, congratulated the jury on finding the defendant guilty and imposed an "exceedingly harsh" sentence. Id. at 1073-74.

This is not a case where the defense's theory implicated a judge who then went to great lengths to clear his name. This is not a case where the judge demonstrated open hostility toward any one of the six attorneys who represented the petitioner. This is a case where the petitioner continuously sought—and was granted—adjournments. This is a case where the petitioner

consulted with his attorney and entered a plea. The petitioner never asked to withdraw the plea and never raised an ineffective assistance of counsel claim in the state court. He expressed satisfaction with his attorney at the time of the plea. Indeed, the discussion surrounding the plea questionnaire and the waiver of rights form established that the plea was knowingly, voluntarily and intelligently made. More important—as the Wisconsin Court of Appeals pointed out—the plea colloquy included a discussion of the mandatory minimum that the petitioner faced.

This background is important because, as the court of appeals stated, this court does not review the judge's statements in isolation. The court asks if the Wisconsin Court of Appeals considered whether the "average judge" in Judge Aprahamian's position was "likely" to be neutral or whether there was an unconstitutional "potential for bias." Caperton, 566 U.S. at 881. The Wisconsin Court of Appeals found that the average judge would have known that the petitioner had pled guilty to two counts that carried a mandatory minimum sentence. Judge Aprahamian's statements—though perhaps poorly worded—were factually accurate. The petitioner was going to spend years in prison (rather than days or months) because in Wis. Stat. §939.617(1) the Wisconsin legislature set a minimum term of imprisonment.

The petitioner suggests that at some point, the judge became personally embroiled in the dispute and expressed his frustration with the petitioner on the record. The United States Supreme Court has held that that "[a] judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." Litkey v. United States, 510 U.S. 540, 556, (1994). "Expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what

imperfect men and women, even after having been confirmed as federal judges, sometimes display" do not establish "bias or partiality." Id. at 555–56.

The Wisconsin Court of Appeals correctly cited the standard articulated by the United States Supreme Court and reasonably applied it to the facts of this case. The petitioner has not cited any cases showing that the Supreme Court (or any other federal court) has held that the due process clause prohibits a judge from referencing a term of imprisonment once the petitioner pleads guilty to counts that carry a mandatory minimum. The court agrees with the Wisconsin Court of Appeals that this is not a case where the petitioner has overcome the presumption articulated by the United States Supreme Court that a trial court judge has "properly discharged his duties." See Bracy v. Gramley, 520 U.S. 899, 904-05 (1997)). The court will deny the petition.

## IV. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability, because reasonable jurists could not debate whether the petitioner's claims warrant *habeas* relief under 28 U.S.C. §2254(d).

## V. Conclusion

The court **DIRECTS** the clerk's office to update the case docket to reflect that Warden Robert Miller is the correct respondent.

The court **DENIES** the petition for writ of *habeas corpus* filed under 28 U.S.C. §2254. Dkt. No. 1.

The court **DECLINES TO ISSUE** a certificate of appealability.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 14th day of September, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**